that all right with Schultz?" and the chief engineer said, "Well, see that you do not keep it shut down too long." There was no evidence that the chief engineer was notified by anybody that the work was to be done at 1 o'clock, or that the elevator was to be shut down at that time. There were 16 elevators in operation in this building at the time, and it would appear that the continued operation of these elevators was necessary for Bloomingdale's business. Without further notice to Bloomingdale or any of his employés, the plaintiff went to work at 1 o'clock, and subsequently the elevator was put in operation and the injury to the plaintiff resulted.

This was not a situation which justified the application of the maxim "res ipsa loquitur," and if there was any question for the jury it could only be because, after Bloomingdale's chief engineer had notice that the plaintiff was to perform this work at a particular time and had undertaken that this particular elevator should not be in operation during the time that he was engaged in the work, he did not perform that obligation. Murray, the chief engineer, absolutely denied any such conversation with the plaintiff, or that he had any knowledge that the plaintiff was at work in this locality, and his testimony was strongly corroborated. It is not claimed that Murray had any notice when the plaintiff would be engaged in this work, or that he was actually engaged in it. Plaintiff's whole case depends upon the meaning of his question to Murray: "Is that all right with Schultz?" From this question Murray could have no information that the plaintiff expected to go to work at 1 o'clock at the foot of this elevator shaft. There is no evidence that Schultz had spoken to Murray about it, and both Murray and Schultz denied this conversation. But, if there was a question for the jury, the defendant was entitled to have the jury specifically instructed that the defendant was entitled to a verdict, unless it was established that Murray had notice of the fact that the plaintiff was to go to work at this locality at 1 o'clock and had undertaken that during the time that he was at work this particular elevator would not be operated.

I therefore concur in the reversal of this judgment.

---

MINCHO v. BANKERS' LIFE INS. CO. OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. December 11, 1908.)

1. INSURANCE (§ 237*)—CANCELLATION OF POLICY—ACTION FOR RESTORATION—
    DEFENSES.
        In a suit to compel an insurance company to restore a policy, a separate defense that plaintiff had falsely and fraudulently represented and warranted that he had never applied for insurance on which a policy was not issued, or on which a policy was issued on a different plan from the one for which he had applied when he had been repeatedly declined insurance, and that as soon as defendant learned that the representations were false, and before the first anniversary of the policy, it notified plaintiff of its election to cancel, and that it was willing to return such part of the premiums paid as it was not entitled to retain, and prayed judgment for damages, etc., was not demurrable.
        [Ed. Note.—For other cases, see Insurance, Dec. Dig. § 237.*]

2. INSURANCE (§ 230*) — CANCELLATION OF POLICY—FRAUD—DAMAGES—RETEN-
   TION OF PREMIUMS.

   Where defendant insurance company sustained provable damages in consequence of plaintiff's fraud in inducing it to issue a policy which it thereafter canceled, it was entitled to offset such damages against the premium received, and was therefore entitled to rescind, as against a suit in equity to compel a reinstatement of the policy, without restoring the entire premium.

   [Ed. Note.—For other cases, see Insurance, Cent. Dig. § 509; Dec. Dig. § 230.*]

Appeal from Special Term, New York County..

Action by Gustav H. Mincho against the Bankers' Life Insurance Company of the City of New York. From an interlocutory judgment sustaining a demurrer to a separate defense in the answer, defendant appeals. Reversed, and demurrer overruled.

Argued before PATTERSON, P. J., and McLAUGHLIN, LAUGHLIN, HOUGHTON, and SCOTT, JJ.

Wilson B. Brice, for appellant.

Charles N. Morgan (George E. Morgan and Sidney Smith, on the brief), for respondent.

LAUGHLIN, J. The plaintiff alleges that on the 19th of June, 1906, the defendant issued to him a policy of insurance on his life in consideration of a premium of $1,397.20, then duly paid, and of the agreement on the part of the plaintiff to pay a like annual premium thereafter for 13 years, and that on or about the 12th day of June, 1907, the defendant declared the policy of insurance canceled and repudiated liability thereunder, and thereafter and on the 19th day of June, 1907, refused to receive and receipt for the annual premium then due and duly tendered. The action is brought to have the policy declared in full force and virtue and to have it restored as an existing contract on the books of the defendant.

That part of the answer to which a demurrer is interposed, alleges among other things, that plaintiff in his application for insurance falsely and fraudulently represented and warranted that he had never made application for life insurance on which a policy was not issued, or on which a policy was issued on a different plan from the one for which he applied, whereas he had repeatedly applied for and been declined insurance in other companies; that the policy contained an express provision that the statements made in the application were warranted by the application to be true; that as soon as the defendant learned that the representations were false, and before the first anniversary of the policy, it duly notified the plaintiff that it had elected to cancel the policy and it did thereupon cancel it; that the defendant has sustained damages in consequence of the false representations and branches of warranty "in the sum of thirteen hundred and twenty-three ($1,323) dollars and upwards," and is willing to restore to the plaintiff the sum of $74.20, or such other amount as it may not be entitled to retain, and prays judgment adjudicating its damages and awarding judgment to plaintiff for such part of the premium paid as it may not be entitled to retain.

The learned court at Special Term held, on the authority of Moore v. Mutual Reserve Fund Life Association, 121 App. Div. 335, 106 N. Y. Supp. 255, that the attempted rescission of the contract of insurance was ineffective on account of the failure of the defendant to return the premium paid. That was an action by the insured to rescind the contract for fraud on the part of the company in inducing the insurance, and it was there held, the fraud being established, that plaintiff was entitled to have the contract rescinded and the premium paid returned, without deduction on account of the insurance afforded by the policy during the period prior to the rescission thereof. That case, however, is quite distinguishable from the one at bar. The court there properly held that the person guilty of the fraud was not entitled to retain the fruits of the contract. In the case now before the court, on the facts admitted by the demurrer, the plaintiff was guilty of fraud in obtaining the insurance, and the company was not fully protected by the rescission of the policy, for it sustained a large amount of damages, which it claims the right to deduct from the premium paid. It is conceivable that such damages could be sustained, for it may have paid the premium to agents from whom it cannot recover it. The company, on discovering the fraud, might have brought an action for a rescission of the policy and to have its damages determined by the court and deducted from the premium which it had received, manifesting a willingness to return the surplus premium over its damages, if any, to the insured. Instead of doing this, it stood on the annulment of the contract and awaited action by the insured, and, when he brought this action in equity for a restoration of his rights under the policy, it meets him with his fraud, which justified it in rescinding the contract, and asks the court to determine its damages and to award the plaintiff the difference between the premium paid and the damages sustained by it, precisely as if it had brought an affirmative action for a rescission of the contract.

We are not called upon to decide whether the rescission would have been good at law. The majority of this court on the former appeal (124 App. Div. 578, 109 N. Y. Supp. 179) expressed the view, which was doubtless obiter, that, if the defendant actually sustained provable damages in consequence of the plaintiff's fraud in inducing it to issue the policy, it was entitled to offset those damages against the premium received, and could, in those circumstances, effectually rescind the contract as against a suit in equity without restoring the premium in toto. We now authoritatively affirm those views. If it was not obliged to return the entire premium, then the fact that it does not show that the damages do not equal the premium should not render its attempted cancellation abortive; for it may well be that the nature of the damages is such that it cannot be said that they were fixed and definite, and that it should not be prejudiced for having left the amount to the decision of the court.

It follows that the interlocutory judgment should be reversed, with costs, and the demurrer overruled, with costs, with leave to plaintiff to withdraw his demurrer on payment of costs. All concur.